**In re REQUEST FROM THE SWISS FEDERAL DEPARTMENT OF JUSTICE AND POLICE Pursuant to the Treaty Between the United States of America and the Swiss Confederation on Mutual Assistance in Criminal Matters.**

**No. 89–1489–CIV–KING.**

United States District Court, S.D. Florida.

Feb. 9, 1990.

ORDER ADOPTING REPORT AND RECOMMENDATION; DENYING MOTION TO QUASH AND GRANTING PROTECTIVE ORDER

JAMES LAWRENCE KING, Chief Judge.

The Honorable Ted E. Bandstra, United States Magistrate, has recommended that this court enter an order in the above-styled action which denies deponent Bruno Giordano's motion to quash subpoena but simultaneously grants his motion for protective order. After careful consideration, the court adopts Magistrate Bandstra's report and recommendation.

In sum, this action arises pursuant to an application from the Swiss Department of Justice under the Treaty Between the United States of America and the Swiss Confed-

eration on Mutual Assistance in Criminal Matters, and title 28 U.S.C. §§ 1696 and 1782. The Swiss have requested that the United States aid them in an ongoing criminal investigation. A witness in that investigation—Mr. Bruno Giordano, the movant here—resides in this district. The initial Swiss request took the form of letters rogatory which called upon the United States to appoint an Assistant United States Attorney as Commissioner and agent for the Swiss Government to obtain evidence from this witness. The United States, in accord with the Swiss letters rogatory, the treaty, 28 U.S.C. § 1782, and Federal Rules of Civil Procedure 30 and 45, issued a subpoena to compel Mr. Giordano to testify. Subsequently, in this same proceeding, the Swiss issued supplementary letters rogatory. In them, they requested that the United States, through the Assistant United States Attorney now established as an appointed representative of the Swiss Government, pronounce an indictment upon Mr. Giordano at his now-scheduled deposition. This indictment would serve to inform Mr. Giordano of his rights under Article 41 of the Geneva Code of Penal Procedure and allow the Swiss to obtain jurisdiction over him so that he might later be tried in Switzerland *in abstentia*, if necessary.

■■ After a full *de novo* review of the case, the court agrees with Magistrate Bandstra's conclusion that the subpoena to testify is valid under the Treaty on Mutual Assistance. The court is also in accord with Magistrate Bandstra that it should enter a protective order to prohibit pronouncement of an indictment. The court concurs in Magistrate Bandstra's reasoning but writes additionally to emphasize the United States' inability to aid the Swiss in indicting Mr. Giordano.

As outlined by Magistrate Bandstra in his report and recommendation, the treaty between the United States and Switzerland must guide the court. Construction of that treaty demands that the court ascertain and follow the intent of the parties to it. *See Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 102 S.Ct. 2374, 72 L.Ed.2d 765 (1982). The court can adduce intent from the literal language of the treaty unless "application of the words of the treaty according to their obvious meaning affects a result inconsistent with the intent or expectations of its signatories." *Id.* at 180, 102 S.Ct. at 2377.

The Treaty between the United States and Switzerland provides:

1. The Contracting Parties undertake to afford each other, in accordance with the provisions of this Treaty, mutual assistance in:

(a) investigations or court proceedings in respect of offenses the punishment of which falls or would fall within the jurisdiction of the judicial authorities of the requesting State or a state or canton thereof . . .

. . . .

4. Assistance shall include, but not be limited to:

(a) ascertaining the whereabouts and addresses of persons;

(b) taking the testimony or statements of persons;

(c) effecting the production or preservation of judicial and other documents, records, or articles of evidence;

(d) service of judicial and administrative documents; and

(e) authentication of documents.

Treaty Between the United States of America and the Swiss Confederation on Mutual Assistance in Criminal Matters, May 25, 1973, *entered into force* January 23, 1977, 27 U.S.T. 2019, T.I.A.S. No. 8302 (hereinafter the "Treaty"). The Treaty allows for the United States and Switzerland to cooperate when gathering materials in criminal investigations. The court must read relevant statutes (28 U.S.C. §§ 1696(a) and 1782(a)) as consistent with the Treaty if at all possible. *See United States v. Lee Yen Tai*, 185 U.S. 213, 221–22, 46 L.Ed. 878 (1902); *United States v. Vetco, Inc.*, 691 F.2d 1281, 1286 (9th Cir.), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981).

In essence, the United States argues that it may, within the Treaty and statutory law, pronounce a Swiss indictment against Mr. Giordano. The United States inter-

prets the language of the Treaty which encompasses the service of documents to include the reading of a Swiss indictment. To this end, the United States advances that the reading of the Swiss indictment equates to service of process in the U.S. system (thus technically coming within the terms of the Treaty), and not to an arraignment.

If the Swiss indictment constitutes an arraignment and not service of process, then the indictment transcends the bounds of the Treaty and calls for entry of a protective order. The Treaty provides for mutual assistance in investigation, information gathering, and simple service of papers, but it evidences no intent of the parties to extend the reach of jurisdiction of each state into the other. For instance, the Treaty states that it does not apply to arrests or execution of judgments. *See* Treaty, Art. 2(1). That the Treaty does not specify that such a request is valid is not conclusive, however. As a liminal matter, Article 4, section 1 and Article 10, section 1 disallow the requested state from using compulsory measures other than those provided in that state. If Swiss indictment equates to U.S. arraignment, then because the United States could not compel Mr. Giordano to appear for arraignment under its laws, it may not do so for Switzerland under the guise of civil discovery. A Swiss indictment equivalent to a U.S. arraignment would go beyond the intent of the Treaty, §§ 1782(a) and 1696(a), and the constraints of American criminal law.

The court concludes that to read the indictment to Mr. Giordano constitutes the equivalent of an arraignment in the United States. An arraignment marks the first critical stage in criminal prosecution and incurs: reading of charges against the accused and a response of the accused to those charges. *See United States v. Gray,* 448 F.2d 164, 167 (9th Cir.1971), *cert. denied sub nom. Ortiz v. United States,* 405 U.S. 926, 92 S.Ct. 974, 30 L.Ed.2d 798 (1972). The effect of an indictment under Swiss law is similar to the effect of an arraignment. To indict a person under the Geneva Code of Penal Procedure, Article 41 causes that person to become subject to the jurisdiction of the Swiss courts. A Swiss court may then try that person *in abstentia.* In both U.S. and Swiss proceedings, the court obtains jurisdiction over the accused and judicial proceedings may properly commence toward judgment. *See Kirby v. Illinois,* 406 U.S. 682, 690–91, 92 S.Ct. 1877, 1882–83, 32 L.Ed.2d 411 (1972). In addition, the United States' argument that in a Swiss indictment the accused need not respond to charges is hypertechnical and naive. Switzerland does not employ an adversarial system of criminal justice, therefore that country may not require a response of the accused. Similarly, the United States' contention that the Swiss indictment amounts to service of process must fail. To read an accused the criminal charges against him cannot equate to simple service of process since the latter is a purely civil procedure in the United States. The net substance and effect of Swiss indictment and American arraignment are the same.

The United States cannot, under its laws, compel a suspect to appear at arraignment without an arrest warrant, or, at least, probable cause. *See Mallory v. U.S.,* 354 U.S. 449, 454, 77 S.Ct. 1356, 1359, 1 L.Ed.2d 1479 (1957). As noted above, compulsory measures under the Treaty are limited to those which the requested state could employ, according to Article 4, Paragraph 1 and Article 10, Paragraph 1 of the Treaty. Therefore, the United States cannot force Mr. Giordano to present himself for indictment on Swiss charges by deposition subpoena. Nothing in the relevant statutory sections is to the contrary. *See* 28 U.S.C. §§ 1782(a) and 1696(a).

In conclusion, the Assistant United States Attorney acting as agent for the Swiss Government may not pronounce indictment upon Mr. Giordano at his deposition. That indictment equates to an arraignment in the U.S. judicial system. The Treaty does not allow the United States to do for Switzerland what it could not do under its own laws; the laws of this country do not allow compelled arraignment on the strength of civil subpoena alone.

Accordingly, after careful consideration, the court

ORDERS and ADJUDGES that the Honorable Ted. E. Bandstra's report and recommendation in this matter is hereby ADOPTED. The court further

ORDERS and ADJUDGES that deponent Bruno Giordano's motion to quash subpoena is hereby DENIED. The court further

ORDERS and ADJUDGES that deponent Bruno Giordano's motion for protective order is simultaneously GRANTED, and a protective order is hereby entered pursuant to Federal Rule of Civil Procedure 26(c) prohibiting the Swiss Magistrate or any United States Attorney or other person acting in her place from pronouncing indictment upon Bruno Giordano when his deposition takes place.