[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 24, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-13712
Non-Argument Calendar
_____

BIA Nos. A95-551-315 & A95-551-316

LUIS A. GUEVARA,
JANETH ESCOBAR, et al.,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

(May 24, 2005)

Before CARNES, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Luis A. Guevara ("Guevara"), Janeth Escobar, Maria C. Guevara, and Jose L. Guevara, through counsel, petition for review of the BIA's decisions adopting and affirming the IJ's order of removal and denial of their asylum and withholding of removal claims.[1]  Guevara raises three issues on appeal: (1)  the IJ acted unfairly when he denied Guevara's application for asylum as untimely; (2) the IJ erred by denying him asylum and withholding relief because the evidence showed that he had a well-founded fear of persecution; and (3) the one-year time bar for filing asylum and the "internal resettlement" are unconstitutional.  For the reasons discussed more fully below, we deny Guevara's petition in part and dismiss in part for lack of jurisdiction.

The lead petitioner, Guevara, was admitted into the United States on or about March 10, 1999, as a non-immigrant visitor with authorization to remain until March 5, 2000.  His wife, Janeth Escobar, and his two children were admitted into the United States on or about January 1, 2000, also as non-immigrant visitors, but with authorization to stay until July 1, 2000.  Guevara filed an application for asylum and withholding of removal, signed April 26, 2002.  On July 17, 2002, all of the petitioners were served with a notice to appear charging them with removability for remaining in the United States for a longer time than permitted,

---

[1] Petitioners do not challenge the IJ's finding that they failed to show a likelihood or possibility of torture under CAT.  Therefore, the claim is deemed abandoned.  See Sepulveda v. U.S. Attorney General, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B). (AR at 547-48, 557-58, 568-69, 579-80).

Guevara's application for asylum and withholding of removal claimed membership in a particular social group, the Liberal Party. He did not claim relief under the CAT. Guevara alleged the following: (1) he arrived in the United States on September 6, 1999, escaping persecution from the FARC;[2] (2) before coming to the U.S., he administered a textile business in Palmira, Colombia; (3) in November 1998 he began receiving phone calls from the FARC demanding that he employ several FARC members and requesting that he sell property and give them money to prevent them from bothering him and his family; (4) as a result, Guevara began to have psychological problems, and his psychologist recommended that he leave Colombia until the situation resolved; (5) he continued to fear for his family because the FARC threatened them and indicated that they would kidnap his oldest son if their demands were not met; (6) he and his family then abandoned the country and their property there; (7) his father-in-law had been subjected to similar threats by the FARC; (8) his wife has no remaining family in Colombia; and (9) the FARC kidnaped one of their trusted employees and demanded that the employee tell them Guevara's whereabouts; and (10) he fears that the FARC will

---

[2] Revolutionary Armed Forces of Columbia. Guevara alleged that there was a brief departure from the United States when he went to the Bahamas and then came back on the same day on September 6, 1999.

3

kill him and his family if returned to Colombia because he is now a FARC enemy.

Prior to his removal hearing, Guevara submitted an addendum to his application alleging the following additional facts: (1) his grandfather had instilled in him loyalty to the Liberal Party since he was very young, and he was involved in the political campaign, inviting peasants to political meetings and encouraging them to vote for Liberal Party candidates; (2) several of his relatives had been subjected to death threats by insurgent groups; (3) many businessmen in Palmira were forced to pay paramilitary organizations to protect their businesses; (4) the FARC called him and told him that he must have a lot of money because he was supporting corrupt politicians and paramilitary groups and asked Guevara to hire five to six FARC members; (5) he told the FARC that he would be putting himself and his family at risk if he employed FARC members; (6) eventually he told the FARC that he might be able to employ some of its members when business was good, but only to evade their demands; (7) the FARC continued to call him, and one day Guevara noticed two people on a motorcycle following him, which is the common operating procedure for hitmen, prompting Guevara to get out of his car and walk home.

Guevara secured counsel to represent him at his removal hearing, and he conceded to the allegations and charge of removability contained in his notice to appear. The IJ indicated to Guevara that, in order to excuse the late filing of his

asylum application, he would be required to show either a changed country condition or an exceptional circumstance for its lateness.

After hearing testimony from Guevara regarding his application for asylum and withholding of removal, the IJ issued an oral decision.[3] He first refused to consider Guevara's application for asylum, finding that Guevara was aware of the one-year filing deadline, failed to submit his application within that deadline or within a reasonable time after expiration of his non-immigrant status, and had failed to establish ineffective assistance of counsel, making his application untimely.[4] The IJ then proceeded to deny Guevara's withholding of removal and CAT claims and ordered the petitioners be removed, finding that (1) general conditions of upheaval are insufficient to demonstrate per se persecution; (2) the FARC's attempted extortion of money or substitution of employees in Guevara's business did not demonstrate imputed political opinion or any other statutory ground for relief under the INA; (3) Guevara had failed to establish a fear, subjective or otherwise, of countrywide persecution, as he had successfully

---

[3] The resolution of the issues on appeal does not rely on any of the evidence or testimony given at the removal hearing. As is discussed infra, we do not address the merits of Guevara's claims for asylum or withholding of removal because we lack jurisdiction over the asylum claim and Guevara has waived or abandoned his withholding of removal claim.

[4] Guevara's testimony was that the woman who helped him fill out his application was a notary and attorney, but not licensed to practice in the United States, and that he was aware of the one-year filing deadline. (AR at 91). Pursuant to 8 C.F.R. § 208.4(a)(5)(iii)(A)-(C), an alien can excuse an untimely application if the reason for the tardiness was ineffective assistance of counsel.

relocated his family prior to coming to the United States and had endured no further problems after moving; and (4) therefore, Guevara had not met his burden of proof under the CAT or for withholding of removal.

On appeal to the BIA, Guevara (through different counsel than had represented him at his removal hearing) argued that the IJ had erred by rejecting his application for asylum as untimely, and argued that the one-year deadline violated the Supremacy Clause of the U.S. Constitution as well as due process because it was contrary to the United Nations Convention on the Status of Refugees, which he argued was of greater hierarchy than the statutory one-year filing deadline. He also argued that he had "demonstrated a clear probability of persecution on account of [his] political opinion," without referring to any evidence or facts to support his assertion. Guevara then filed a brief with the BIA arguing that (1) the IJ should have ordered the filing of a new application for asylum because Guevara received ineffective assistance of counsel; (2) the IJ was biased, and denied Guevara's application solely because of the one-year deadline; (3) the one-year deadline was unconstitutional because it violated the Supremacy Clause, which required the United States to give full force to the U.N. Convention it had adopted by treaty; and (4) the facts of Guevara's case required that the BIA grant him asylum (emphasis supplied).

The BIA, in a written per curiam opinion, adopted and affirmed the decision

6

of the IJ, stating that the IJ properly determined that Guevara's application for asylum was not timely filed and that he had failed to meet his burden of proof on withholding of removal, and protection under the CAT. It concluded that Guevara had "put forth no appellate arguments which would persuade us to disturb the Immigration Judge's findings and conclusions."

Because Guevara's removal proceedings commenced after April 1, 1997, the effective date of IIRIRA, this case is governed by the permanent provisions of the INA, as amended by IIRIRA. Gonzalez-Oropeza v. U.S. Attorney General, 321 F.3d 1331, 1332 (11th Cir. 2003). This Court will review only the BIA's decision, except to the extent that it expressly adopts the IJ's opinion. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (citation omitted) (transitional rules case). Insofar as the BIA adopts the IJ's reasoning, this Court will review the IJ's decision as well. Id. (citation omitted).

Guevara's first argument on appeal is that the IJ acted unfairly when he denied Guevara's application for asylum as untimely. The government argues that we lack jurisdiction to review the IJ's decision regarding the timeliness of Guevara's application.

We review de novo questions of subject matter jurisdiction. Brooks v. Ashcroft, 283 F.3d 1268, 1272 (11th Cir. 2002). As amended by IIRIRA, INA § 208(a)(2)(B), 8 U.S.C. § 1158(a)(2)(B), provides that an alien may not apply for

7

asylum unless he demonstrates by clear and convincing evidence that the application was filed within one year of his arrival in the United States. A late application for asylum may be considered if the alien demonstrates to the Attorney General's satisfaction the existence of either changed circumstances or extraordinary circumstances relating to the delay in filing the application. See INA § 208(a)(2)(D), 8 U.S.C. § 1158(a)(2)(D). Pursuant to § 1158(a)(3), however, "[n]o court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)." INA § 208)a)(3), 8 U.S.C. § 1158(a)(3).

We have held that "federal courts do not have jurisdiction to review the Attorney General's decision as to timeliness of [an asylum] request. Pursuant to 8 U.S.C. § 1158(a)(3), the Attorney General's decision regarding whether an alien complied with the one-year time limit or established extraordinary circumstances, such that the time limit should be waived, is not reviewable by any court." Fahim v. United States Attorney General, 278 F.3d 1216, 1217 (11th Cir. 2002). Thus, we are without jurisdiction to review the IJ's and BIA's finding that Guevara's asylum claim was untimely, and Guevara's petition for review of that decision is dismissed for lack of jurisdiction. We will, however, to the extent Guevara properly raises the issues, review Guevara's eligibility for withholding of removal or relief under the CAT. See id. at 1217-18.

In his brief, Guevara lists, among his statement of issues, that the BIA and IJ

8

erred by denying him asylum and withholding relief because the evidence showed that he had a well-founded fear of persecution, there was no argument against his credibility, and the one-year filing requirement for asylum claims mechanically excludes legitimate asylum claims. However, throughout the substantive portion of Guevara's brief, no argument is made as to the BIA's and IJ's determination that Guevara did not qualify for withholding of removal. Instead, Guevara argues that his asylum application was not given adequate consideration because it was dismissed as untimely and, therefore, the BIA and IJ ignored the evidence Guevara presented showing that the FARC did more than merely extort him. Nowhere in the brief is an argument found regarding the burden of proof or standards for withholding of removal, nor is any case law cited to support his arguments. Significantly, Guevara did not argue any error in the denial of withholding of removal or CAT claims to the BIA either, instead focusing on asylum and the constitutionality of the one-year filing requirement. In sum, the only arguments Guevara makes (or mentions) regarding withholding of removal are found in two conclusory statements, one in the "statement of issues," the other in the "conclusion."

Pursuant to Fed.R.App.P. 28(a)(9), an appellant's brief must contain his "(A) contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies; and (B) for each issue, a concise statement

9

of the applicable standard of review." Fed.R.App.P. 28(a)(9)(A)-(B). We have held that the failure to elaborate or provide any citation of authority in support of an argument on appeal acts as a waiver of the argument for appellate purposes. Flanigan's Enterprises, Inc. of Georgia v. Fulton County, Georgia, 242 F.3d 976, 987 n.16 (11th Cir. 2001). Furthermore, failure to offer argument on an issue abandons it. Sepulveda, 401 F.3d at 1228 n.2. Finally, and most fatal to Guevara's claim, is that passing references to issues are insufficient to raise the claim on appeal. Id.

Here, Guevara's brief, despite being counseled, notably does not include a standard of review, let alone the standard of review of the BIA's decision denying withholding of removal. It mentions the words "withholding of removal" twice on page nine in the "statement of issues," and then fails to describe what is needed to be proven to the IJ to qualify for withholding of removal. Instead, Guevara argues that the IJ improperly denied him asylum and challenges the constitutionality of the one-year filing deadline applied by the IJ to deny him his asylum claims. Thus, the failure of Guevara to identify citations, authority, or arguments regarding the denial of his withholding of removal claim is fatal to his appeal of that issue, and we find that his argument is abandoned and/or waived. See also I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 429 n.6, 107 S.Ct. 1207, 1212 n.6, 94 L.Ed.2d 434 (1987) (explaining that "[a]sylum and withholding of deportation are two distinct forms of

10

relief" and distinguishing between the two).

Guevara's final argument is that the one-year time bar for filing asylum applications violates the United Nations Convention of the Status of Refugees by adding a reason for which an asylum can be denied contained in that Convention. He argues that because the U.S. Senate has ratified the U.N. Convention, the United States is bound to follow the Convention, and the Supremacy Clause of the United States Constitution requires that the treaty trump the federally enacted INA § 208(a)(2)(B), 8 U.S.C. § 1158(a)(2)(B). He also argues that the requirement that an alien not have a reasonable resettlement alternative in his own country before an asylum claim will be granted violates the United States Constitution and was improperly applied in the present case.

We review questions of constitutional law de novo. See Loyd v. Alabama Dep't of Corrections, 176 F.3d 1336, 1339 (11th Cir. 1999). The Supremacy Clause provides as follows:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding

U.S. Const. Art. VI, cl. 2. With respect to the Supremacy Clause, the Supreme Court explained the relationship between a treaty and a federal statute as follows:

11

A treaty is primarily a contract between two or more independent nations, and is so regarded by writers on public law . . .When the stipulations are not self-executing, they can only be enforced pursuant to legislation to carry them into effect . . . If the treaty contains stipulations which are self-executing, that is, require no legislation to make them operative, to that extent they have the force and effect of a legislative enactment . . . By the constitution, a treaty is placed on the same footing, and made of like obligation, with an act of legislation. Both are declared by that instrument to be the supreme law of the land, and no superior efficacy is given to either over the other. When the two relate to the same subject, the courts will always endeavor to construe them so as to give effect to both, if that can be done without violating the language of either; but, if the two are inconsistent, the one last in date will control the other: provided, always, the stipulation of the treaty on the subject is self-executing.

Whitney v. Robertson, 124 U.S. 190, 194, 8 S.Ct. 456, 458, 31 L.Ed. 386 (1888).

Guevara cites to Chapter I, Art 1, Sub. F of the U.N. Convention[5] in his

brief, which reads:

The provisions of this Convention shall not apply to any person with respect to whom there are serious reasons for considering that:

(a) he has committed a crime against peace, a war crime, or a crime against humanity, as defined in the international instruments drawn up to make provision in respect of such crimes;
(b) he has committed a serious non-political crime outside the country of refuge prior to his admission to that country as a refugee;
(c) he has been guilty of acts contrary to the purposes and principles of the United Nations.

---

[5] The United States is not a signatory to the U.N. Convention itself, but rather to the Protocol, which bound all signatories to comply with the substantive provisions of Articles 2-34. See I.N.S. v. Stevic, 467 U.S. 407, 416, n.9, 104 S.Ct. 2489, 2494, n.9, 81 L.Ed.2d 321 (1984).

Protocol Relating to the Status of Refugees, Nov. 1, 1968, Ch. I., Art. 1, Sub. F, 19

U.S.T. 6223.  Guevara states that this provision is the only limitation to granting an

alien political asylum.

Notwithstanding the numerous other provisions of the treaty establishing

limitations on its applicability to certain aliens (see, e.g, Art I. Ch. 1, Subs. C-E),

Guevara ignores two other important provisions of the convention and protocol, as

well as the manner in which the United States has chosen to comply.  The first is

Chapter III, Art. 34, which reads:

> The Contracting States shall as far as possible facilitate the
> assimilation and naturalization of refugees. They shall in particular
> make every effort to expedite naturalization proceedings and to reduce
> as far as possible the charges and costs of such proceedings.

Protocol Relating to the Status of Refugees, Nov. 1, 1968, Ch. III., Art. 34, Sub. F,

19 U.S.T. 6223.

The United States Supreme Court has explained that the United States has

met its obligation to comply with this Article by establishing discretionary relief in

the form of asylum for those aliens who qualify as refugees under the INA.  See

Cardoza-Fonseca, 480 U.S. at 441, 107 S.Ct. at 1218.

The second is Chapter III, Art. 33, which states:

> (1) No Contracting State shall expel or return ("refouler") a refugee in
> any manner whatsoever to the frontiers of territories where his life or
> freedom would be threatened on account of his race, religion,
> nationality, membership of a particular social group or political

13

opinion.

> (2) The benefit of the present provision may not, however, be claimed by a refugee whom there are reasonable grounds for regarding as a danger to the security of the country in which he is, or who, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of that country.

Protocol Relating to the Status of Refugees, Nov. 1, 1968, Ch. III., Art. 33, Sub. F, 19 U.S.T. 6223.

The Supreme Court has noted that neither Article 33 nor Article 34 of the Protocol are self-executing or precatory. See I.N.S. v. Chevic, 467 U.S. 407, 426, n.22, 104 S.Ct. 2489, 2500 n.22, 81 L.Ed.2d 321 (1984) (stating that Article 34 is not self-executing); Cardoza-Fonseca, 480 U.S. at 441, 107 S.Ct. at 1218 (describing Article 33 as precatory); see also Haitian Refugee Center, Inc. v. Baker, 949 F.2d 1109, 1110 (11th Cir. 1992) (holding that Article 33 is not self-executing). Thus, because the Protocol is not self-executing, we conclude that the one-year time bar does not violate the Supremacy Clause.

Lastly, to the extent that Guevara argues that the "internal resettlement" rule is unconstitutional, we find the contention is without merit. We have held that:

> [I]t is not unreasonable to require a refugee who has an internal resettlement alternative in his own country to pursue that option before seeking permanent resettlement in the United States, or at least to establish that such an option is unavailable. As a matter of immigration policy, a government may expect that an asylum seeker be unable to obtain protection anywhere in his own country before he seeks the protection of another country. We therefore uphold the

14

BIA's imposition of a country-wide requirement in this case. Mazariegos v. Office of the United States Attorney General, 241 F.3d 1320, 1327 (11th Cir. 2001). Thus we conclude that the "internal relocation" rule is not unconstitutional as applied. Moreover, as discussed above, we will not review the IJ's determination that internal resettlement was likely a viable option for Guevara.

For the foregoing reasons, we conclude that (1) Guevara waived or abandoned any argument regarding the BIA's and IJ's decisions regarding his withholding of removal and CAT relief, (2) we lack jurisdiction to review his asylum claim, and (3) Guevara's constitutional arguments lack merit. Accordingly, Guevara's petition is denied in part and dismissed in part for lack of jurisdiction.

**PETITION DENIED IN PART, DISMISSED IN PART.**