[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 15, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-13372

_____

D. C. Docket No. 07-00027-CV-J-32MCR

GALINA WEBER,
In the Matter of Her Application,

Petitioner-Appellee,

versus

LAZAR FINKER,
RAISSA M. FRENKEL,
STEVEN CHARLES KOEGLER,
WILLIAM E. CHATTIN,
THEODORUS J. KAVALIEROS,
AFRODITI KAVALIEROS,
individuals; respondent discovery sought from,

Respondents-Appellants,

IGOR V. MAKAROV,
an individual; respondent discovery sought from,

Respondent.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

**(January 15, 2009)**

Before WILSON and COX, Circuit Judges, and ALBRITTON,[*] District Judge.

WILSON, Circuit Judge:

This case involves the authority of the federal district courts to assist litigants before foreign tribunals with the production of evidence in the United States. The Appellants are shareholders in Itera Group, Ltd., a Cypriot corporation, who all reside in Jacksonville, Florida ("Florida shareholders"). The Florida shareholders appeal the Magistrate Judge's April 15, 2008 Order granting in part and denying in part Galina Weber's Motion to Compel Discovery, and the district court's May 20, 2008 affirmance of that Order. Weber's Motion to Compel Discovery was filed pursuant to 28 U.S.C. § 1782(a), which provides discovery assistance for litigants before foreign tribunals. After review and oral argument, we affirm.

## I.    BACKGROUND

Weber is a citizen of Switzerland and a resident of Monaco. Like the

[*]Honorable William H. Albritton, III, United States District Judge for the Middle District of Alabama, sitting by designation.

Florida shareholders, she is a shareholder of Itera Group. Itera Group is a large company with many subsidiaries throughout the world, with oil and natural gas concerns in Russia and real estate holdings. Weber's husband, Urs Weber, was legal counsel to an Itera subsidiary, and her brother-in-law, Silvio Weber, was a director of an Itera subsidiary.

## A. Foreign Legal Actions

Weber is involved with two separate foreign legal actions. Both involve business transactions with Itera Group. Weber is the plaintiff in a Cypriot civil action. She is also the defendant in a Swiss criminal action, which Itera instituted against her, alleging that she received property embezzled from the company.

Weber filed a civil lawsuit in Cyprus against Itera Group, the CEO of Itera Group, Igor V. Makarov, and Sweet Water Intervest Corporation, which is a British Virgin Islands corporation that Weber alleges is controlled by Makarov. Weber claims that Makarov offered to buy her 14% ownership interest in Itera Group, but then backed out when he believed he could get her shares for less money. She alleges that Makarov had Itera Group's Board of Directors authorize the issuance of six million shares to dilute her ownership interest from 14% to 4%. She further alleges that she was denied the right of first refusal and that other shareholders received funds to purchase the additional shares from Makarov,

through Itera Group or an affiliated company.

After Weber instituted the Cypriot action, Gas Itera, an Itera Group subsidiary, filed criminal charges against Weber in Switzerland, alleging that Weber embezzled Itera Group assets. Specifically, Itera alleges that Weber, through collusion with her husband and brother-in-law, embezzled a Swiss castle worth $4.8 million from Itera Group. Weber's defense is that Itera Group owed her $4.8 million in unpaid dividends. Under Swiss law, offsetting a debt in such a situation is a complete defense to embezzlement.

Weber alleges that, in January 2005, the Itera Group Board of Directors approved a shareholder dividend of $80 million, to be dispersed in two payments ("tranches") of $40 million. In March 2004, Itera paid the first dividend, and all shareholders, including Weber, received their proportionate share. Weber alleges that the Itera Group Board approved the second payment at its May 28, 2005 meeting, but that she did not receive her proportionate share. Weber alleges she received an amount equal to 2.5% ownership interest rather than the 14.5% ownership interest she had in the corporation. The unpaid 12% would have been equal to $4.8 million. Weber further alleges that the Florida shareholders received full payment of their proportionate shares.

**B. Petition for Discovery in Aid of Foreign Proceedings**

4

On April 27, 2007, Weber filed a Petition for Discovery in Aid of Foreign Proceedings, pursuant to 28 U.S.C. § 1782(a), which she later amended. Weber's Amended Petition seeks discovery of documents related to both the Cypriot and Swiss actions. On October 11, 2007, the Magistrate Judge issued a Report and Recommendation concluding that Weber was entitled to discovery governed by the Federal Rules of Civil Procedure. The United States District Court for the Middle District of Florida adopted the Magistrate Judge's Report and Recommendation and granted Weber's Amended Petition for Discovery in Aid of Foreign Proceedings. The district court authorized the Magistrate Judge to consider Weber's Motion to Compel and enter an Order with the final decision on the scope of permissible discovery, which would be subject to review only if clearly erroneous or contrary to law.

On May 20, 2008, the district court ordered that the Florida shareholders produce responsive documents by June 5, 2008. The Florida shareholders filed a Motion to Stay. The district court entered its Order and granted a temporary stay pending appeal on the Motion to Stay to this Court. On August 4, 2008, we denied the Florida shareholder's Motion to Stay. The district court directed that the Florida shareholders had until August 12th to produce responsive documents. The Florida shareholders appealed.

5

## II.   STANDARD OF REVIEW

We review a district court's grant of judicial assistance to a foreign country for abuse of discretion. *In re: Clerici*, 481 F.3d 1324, 1331 (11th Cir. 2007). "[T]his deferential standard is identical to that used in reviewing the district court's ordinary discovery rulings." *Id.* (internal quotation marks and citation omitted).

We review a district court's interpretation of law *de novo.* *Id.* "Thus, this Court reviews *de novo* the district court's interpretation of a treaty or a federal statute such as § 1782." *Id.*

## III.   DISCUSSION

### A.   The Relationship Between 28 U.S.C. § 1782 and the U.S.-Switzerland MLAT

The Florida shareholders argue that Weber should have brought her request for judicial assistance under The Treaty Between the United States of America and the Swiss Confederation on Mutual Assistance in Criminal Matters, ("U.S.-Switzerland MLAT") rather than under 28 U.S.C. § 1782. We disagree.

"As 'in all statutory construction cases, we begin with the language of the statute.'" *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255, 124 S. Ct. 2466, 2477 (2004) (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450, 122 S. Ct. 941, 950 (2002)) (alternations omitted). 28 U.S.C. § 1782(a)

specifically provides that "[t]he district court of the district in which a person resides or is found may order him . . . to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." Section 1782(a) further provides that "[t]he order may be made . . . upon the application of *any interested person*. . . ." 28 U.S.C. § 1782(a) (emphasis added). *See also Intel Corp.*, 542 U.S. at 256-58, 124 S. Ct. 2478-79 (holding that private parties may seek discovery for use in a foreign proceeding through § 1782).

In contrast, the U.S.-Switzerland MLAT provides that "[t]he *Contracting Parties* undertake to afford each other . . . mutual assistance in: [a] investigations or court proceedings in respect of offenses the punishment of which falls or would fall within the jurisdiction of the judicial authorities of the requesting State or a state or canton thereof. . . ." Treaty Between the United States of America and the Swiss Confederation on Mutual Assistance in Criminal Matters, U.S.-Switz., art. 1, Dec. 23, 1975, 27 U.S.T. 2019 (hereinafter "U.S.-Switz. MLAT") (emphasis added).

28 U.S.C. § 1782(a) and the U.S.-Switzerland MLAT are consistent with one another. Whereas § 1782 specifically provides that "any interested person" may apply to a United States district court for foreign discovery assistance, the U.S.-

Switzerland MLAT is a treaty between States Parties. 28 U.S.C. § 1782(a). All of the language in the treaty speaks to facilitating discovery for the "Contracting Parties" or "Contracting States," namely, the United States and Switzerland. A plain reading of the U.S.-Switzerland MLAT indicates that it is designed to help federal and state prosecutors. The treaty is silent on its applicability to discovery requests by non-States Parties criminal defendants.[2] *See, e.g., In re: Request from the Swiss Fed. Dep't of Justice & Police*, 731 F. Supp. 490, 491 (S.D. Fla. 1990) (holding, in a case where the Swiss government sought assistance in a criminal prosecution, that the MLAT and § 1782 should be read as consistent with one another).

Moreover, even if § 1782 and the U.S.-Switzerland MLAT were inconsistent, § 1782 would still be the appropriate vehicle for Weber's discovery request under the last in time rule. "When [a treaty and statute] relate to the same subject, the courts will always endeavor to construe them so as to give effect to both, if that can be done without violating the language of either; but if the two are inconsistent, the one last in date will control the other . . . ." *Whitney v. Robertson*, 124 U.S. 190, 194, 8 S. Ct. 456, 458 (1888). *See also Valencia v.*

---

[2] We decline to hold that no private party could ever seek redress, facilitated by their State Party, pursuant to the MLAT. However, a plain reading of the treaty indicates that the MLAT is designed to facilitate discovery between States Parties.

8

*United States AG*, No. 05-15748, 2006 U.S. App. LEXIS 9999, *13 (11th Cir. Apr. 20, 2006) (per curiam); *Guevara v. United States AG*, No. 04-13712, 2005 U.S. App. LEXIS 9552, *15 (11th Cir. May 24, 2005) (per curiam). The U.S.-Switzerland MLAT went into force on January 23, 1977. Although § 1782 was enacted in 1948, it was amended in 1996, rendering it "last in date." Regardless of the fact that the U.S.-Switzerland MLAT provides that "[t]he provisions of this Treaty shall take precedence over any inconsistent provisions of the municipal laws in the Contracting States," § 1782 controls. U.S.-Switz. MLAT, art. 38.

Furthermore, when Congress amended § 1782 in 1996, it did so by inserting "including criminal investigations conducted before formal accusation" after the words "for use in a proceeding in a foreign or international tribunal. . . ." Congress clearly intended for § 1782 to facilitate discovery by individuals for use in foreign criminal actions. Here, Weber sought judicial assistance prior to formal accusation by the Swiss government. Section 1782 is expressly applicable to her request.

**B.      The Federal Rules of Civil Procedure**

The Magistrate Judge ordered that the Florida shareholders provide discovery pursuant to the Federal Rules of Civil Procedure. Section 1782 provides that "[t]he order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country . . . [t]o the extent that the

9

order does not prescribe otherwise, . . . the document [shall be] produced, *in accordance with the Federal Rules of Civil Procedure.*"  28 U.S.C. § 1782(a) (emphasis added).  *See also Kestrel Coal PTY. Ltd. v. Joy Global Inc.*, 362 F.3d 401, 404 (7th Cir. 2004) (holding that discovery "must conform either to the procedure of the foreign nation or to that of the Federal Rules of Civil Procedure"); *In re Edelman*, 295 F.3d 171, 178 (2d Cir. 2002) (applying the Federal Rules of Civil Procedure to a § 1782(a) discovery request); *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 192 (3d Cir. 1999) ("[S]ection 1782 . . . incorporates by reference the scope of discovery permitted by the Federal Rules of Civil Procedure.); *Application of Sumar*, 123 F.R.D. 467, 469-70 (S.D.N.Y. 1988) (declining to apply the Federal Rules of Criminal Procedure where the foreign proceeding was criminal in nature).  Given that § 1782(a) directs judges to provide discovery assistance pursuant to the Federal Rules of Civil Procedure, the district court was well within its discretion to order discovery pursuant to the Federal Rules of Civil Procedure in this case.[3]

---

[3]The Florida shareholders contend that Weber will be able to discover a broader range of documents under the Federal Rules of Civil Procedure than she would be able to discover under the Federal Rules of Criminal Procedure.  They argue that we should not allow Weber to receive more discovery for her Swiss criminal action than a United States prosecutor would be allowed to discover for use in a prosecution in the United States.  This argument is without merit.  The Supreme Court held in *Intel* that discovery under § 1782 is not limited to discovery that would be allowed under United States law "in domestic litigation analogous to the foreign proceeding."  *See Intel*, 542 U.S. at 263, 124 S. Ct. at 2483.

The Florida shareholders contend that we should limit discovery to documents "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). They argue that the "for use in" language limits the scope of discovery available through § 1782(a) to documents that will actually be used in the foreign proceedings.

"Once discovery is authorized under § 1782, the federal discovery rules, *Fed. R. Civ. P. 26-36*, contain the relevant practices and procedures for the taking of testimony and the production of documents." *In re Clerici*, 481 F.3d at 1336. Section 1782 does not require that every document discovered be actually used in the foreign proceeding. Quite the opposite. Section 1782 expressly provides that the district court should grant discovery under the Federal Rules of Civil Procedure. Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense– including the existence, description, nature, custody, condition, and location of any documents. . . ." FED. R. CIV. P. 26(b)(1). The Magistrate Judge did not err by granting discovery "for context," when such discovery is allowed under Rule 26(b)(1).[4]

---

[4]Although Weber simultaneously sought discovery for both her Cypriot and Swiss actions, the Magistrate Judge made careful rulings on the scope of discovery, separating out which discovery requests were appropriate for each action. The Magistrate Judge's careful analysis was adopted by the district court. The district court did not abuse its discretion.

11

## C. Order Granting In Part Weber's Motion To Compel

Finally, the Florida shareholders contend that a Motion to Compel under § 1782 is a final, dispositive order because, although there is an ongoing action in a foreign tribunal, the Motion to Compel is the final order to be issued by the United States court. They argue that the district court improperly determined the Motion to Compel to be a pretrial matter that could be referred to the Magistrate Judge.

The Florida shareholders did not object to the referral until after the Magistrate Judge entered his Order. "[A] party who objects to a reference to a magistrate must make his objections known either at the time of reference or soon thereafter." *Hill v. Duriron Co., Inc.*, 656 F.2d 1208, 1213 (6th Cir. 1981). "A party waives his objection when he participates in a proceeding before a magistrate and fails to make known his lack of consent or fails to object to any other procedural defect in the order referring the matter to the magistrate until after the magistrate has" ruled. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 925 F.2d 853, 857 (5th Cir. 1991). The Florida shareholders waived this challenge to the referral by failing to timely object.

## IV. CONCLUSION

Upon review of the record and the parties' briefs, and with the benefit of oral argument, we discern no error. Accordingly, we affirm the district court's May 20,

2008 Order.

**AFFIRMED.**